IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MORGAN ELIZABETH FITZMAURICE, | ) CASE NO. 1:20-2745 |
| Plaintiff, | ) |
| vs. | ) MAGISTRATE JUDGE |
| | ) JONATHAN D. GREENBERG |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) |

Plaintiff, Morgan Elizabeth Fitzmaurice ("Plaintiff" or "Fitzmaurice"), challenges the final decision of Defendant, Kilolo Kijakazi,[1] Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. PROCEDURAL HISTORY**

On November 8, 2018, Fitzmaurice filed an application for SSI, alleging a disability onset date of November 1, 2010 and claiming she was disabled due to post-traumatic stress disorder, depression, anxiety, and borderline personality disorder. Transcript ("Tr.") at 10, 233. The application was denied initially and upon reconsideration, and Fitzmaurice requested a hearing before an administrative law judge ("ALJ"). Tr. 135.

On October 29, 2019 an ALJ held a hearing, during which Fitzmaurice, represented by counsel,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.

1

and an impartial vocational expert ("VE") testified. Tr. 40-78. On January 23, 2020, the ALJ issued a written decision finding that Fitzmaurice was not disabled. Tr. 10-23. The ALJ's decision became final on October 21, 2020, when the Appeals Council declined further review. Tr. 1-3.

On December 10, 2020, Fitzmaurice filed her Complaint to challenge the Commissioner's final decision. Doc. No. 1. The parties have completed briefing in this case. Doc. Nos. 13, 14, 16. Fitzmaurice asserts the following assignment of error:

> The ALJ erred by relying on jobs identified by the vocational expert to fulfill her step 5 burden without properly addressing Plaintiff's objections and rebuttal evidence regarding that testimony.

Doc. No. 13, p. 1.

## II. EVIDENCE[2]

**A.  Personal and Vocational Evidence**

Fitzmaurice was born in 1980 and was 38 years-old, making her a "younger" person under social security regulations at the time she filed her application. Tr. 21. *See* 20 C.F.R. § 416.963(c). She has at least a high school education and is able to communicate in English. Tr. 21. She has past relevant work as a registered nurse. Tr. 21.

**B.  Hearing Testimony**

During the October 29, 2019 hearing, the ALJ asked the VE to describe Fitzmaurice's past relevant work and the VE answered that Fitzmaurice performed work as a registered nurse. Tr. 63. The ALJ asked the VE whether a hypothetical individual with the same age, education and past work as Fitzmaurice could perform her past work or any other work if the individual had the following residual functional capacity: able to perform work at all exertional levels but can never climb ladders, ropes, or scaffolds; must avoid all exposure to hazards such as unprotected heights, hazardous machinery, and

---

[2] The parties did not include medical evidence in their briefs because Fitzmaurice only challenges the ALJ's treatment of the VE testimony at the hearing and Fitzmaurice's post-hearing vocational rebuttal evidence. Thus, the Court only recites the relevant evidence regarding that issue.

commercial driving; can perform simple, routine tasks consistent with unskilled work with no fast pace or high production quotas and with infrequent change where changes are explained in advance; brief superficial interactions with others, *i.e.*, limited to speaking-signaling, serving or taking instructions and helping as defined in the Selected Characteristics of Occupations ("SCO"). Tr. 64. The VE testified that the hypothetical individual would not be able to perform Fitzmaurice's past work but could perform the following, SVP-2 unskilled jobs in the economy: garment sorter, checker, and marker. Tr. 64-65. The ALJ asked the VE if his answer would change if the hypothetical individual described above could not perform direct work with the general public and the VE stated that his answer would not change. Tr. 65. The ALJ asked the VE if his answer would change if the hypothetical individual described above was limited to low stress work meaning no arbitration, negotiation, responsibility for the safety of others or supervisory responsibility and the VE stated that his answer would not change. Tr. 66. The ALJ asked the VE if his answer would change if the hypothetical individual described above would be off-task at least 20% of the time or absent from work more than four times a month due to mental health symptoms and the VE stated that there would be no work for such an individual. Tr. 66. The ALJ asked the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and the SCO defined in the revised DOT and the VE stated that it was, except for off-task behavior and rate of absenteeism. Tr. 67.

Fitzmaurice's attorney asked the VE about the job market that he had identified: whether the DOT differentiates between "simple" and "detailed" occupations. Tr. 67. The VE stated that there is a breakdown of the reasoning level and math "under the GED section which gives you a good indication of what those positions would be." Tr. 67. The attorney asked if it was fair to say, then, that a limitation to simple/routine tasks and unskilled work would preclude the ability to carry out detailed, written, and oral instructions, and the VE answered, "that's a general description of an SVP 2 position" but that

3

"general descriptions don't always account for how jobs are actually performed or what jobs that would apply to" and reiterated that the jobs he identified would fall within the realm of the ALJ's hypothetical. Tr. 68. The attorney confirmed that all jobs in the DOT have an SVP and reasoning level requirement and the VE agreed. Tr. 68. The attorney asked whether, according to "Appendix C to the DOT and consistent with the Revised Handbook for Analyzing Jobs, it's true that the SVP refers strictly to the amount of time it takes to learn a job?" and the VE agreed, explaining that for the SVP 2 jobs he identified "it's beyond a short demonstration and up to one month." Tr. 68. The attorney confirmed that, according to the DOT and the Revised Handbook, "the GED reasoning scale reflects the aspects of education, both formal and informal, which are required for satisfactory job performance and which contribute to the person's reasoning development and ability to follow instructions" and the VE agreed. Tr. 69. The VE confirmed that, when answering the ALJ's hypothetical, the VE did not consider any factors or limitations beyond those identified by the ALJ. Tr. 69.

Fitzmaurice's attorney asked the VE whether the individual described by the ALJ in the first hypothetical would be able to retain a job if the individual would be off-task 10% of the workday and absent one day a month. Tr. 69. The VE replied that such an individual would not be able to retain a job if that limitation lasted for six months or longer. Tr. 69-70.

C. **Fitzmaurice's Rebuttal Brief and Report Created by Mark Heckman**

On November 4, 2019, Fitzmaurice's counsel submitted a brief challenging the VE's testimony at the hearing. Tr. 322-324. The brief included a rebuttal report created by vocational rehabilitation counselor Mark Heckman and requested that Fitzmaurice be permitted to submit interrogatories to the VE who testified at the hearing. Fitzmaurice argued that the VE's testimony at the hearing was "'surprise testimony' which could not be reasonably prepared for in advance or, given the complexity of the vocational testimony, responded to immediately, without the ability to consult the vocational source

4

materials relied upon by the [VE] first." Tr. 322. The following is the basis for Fitzmaurice's objections to the VE's testimony regarding the jobs Fitzmaurice could perform:

> (1) The marker job is not unskilled as currently performed;
>
> (2) None of the jobs are performed in the socially isolated fashion required by the hypothetical;
>
> (3) The job numbers offered by the VE are not coherent in both their inconsistency with Job Browser Pro but also in the fact that in many cases, the numbers offered do not even rationally relate to the total number of jobs in the SOC group.

Tr. 323.[3]

Heckman's report recited the ALJ's RFC and listed the jobs that the VE had identified at the hearing. Tr. 325. Heckman disagreed that the hypothetical individual described by the ALJ could perform the jobs the VE had identified because, based on his experience, a limitation to brief and superficial interaction with coworkers and/or supervisors precludes all work. Tr. 325. He explained that the training and probationary for any job requires more than brief and/or superficial interaction with coworkers and supervisors and that the training period for SVP 1-2 level, unskilled jobs can last up to 30 days. Tr. 325. As a result, Heckman stated, if a person was limited to brief and superficial interaction, that person "would not survive the training/probationary period of any job and would be unemployable in the competitive labor market." Tr. 325. Heckman also stated that he relies upon the O*NET, rather than the DOT, which he finds to be superior and more up-to-date. Tr. 325-326. Based on his analysis using additional vocational resources, Heckman opined that the number of available jobs identified by the VE were "far less than 1000, if any," and "possibly even zero." Tr. 326-327.

---

[3] In her rebuttal brief, Fitzmaurice recited the hypothetical the ALJ gave to the VE and cited three jobs that the VE had not identified. Tr. 323.

5

### III. STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 8, 2018, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: disorders of the nervous system, history of narcolepsy and cataplexy, hernia abdominal wall, hiatal hernia, Barrett's esophagus, headaches, obesity, irritable bowel syndrome, other bipolar disorder, and posttraumatic stress disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never climb ladders, ropes, or scaffolds. She must avoid all exposure to hazards such as unprotected heights, hazardous machinery, and commercial driving. She can perform simple, routine tasks (unskilled work) with no fast pace or high production quotas and with infrequent change where changes are explained in advance. She can have brief superficial interactions with others, limited to speaking-signaling, or taking instructions and helping as defined in the SCO. She can perform no direct work with the general public. She can perform low stress work meaning no arbitration, negotiation, responsibility for the safety of others or supervisory responsibility.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on January **, 1980 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 8, 2018, the date the application was filed (20 CFR 416.920(g)).

Tr. 13-23.

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir.2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996)); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v.Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI. ANALYSIS

Fitzmaurice argues that the ALJ erred by not addressing her post-hearing rebuttal evidence "in any meaningful way." Doc. No. 13, p. 3. She submits that the agency has the burden at step five, "which can only be met based on up-to-date, reliable job information," and that a social security claimant must be permitted to confront evidence against her and present rebuttal evidence regarding VE testimony. Doc. No. 13, pp. 3-5. She also challenges the ALJ's reasons for rejecting her rebuttal report. Doc. No. 13, pp. 8-16. Defendant argues that that Fitzmaurice forfeited her objections to the VE testimony by failing to raise them at her hearing; she had no right to have the ALJ consider her post-

hearing objections; and, even if the ALJ was obligated to address her objections, the ALJ "met that obligation." Doc. No. 14, pp. 8-10.

In her decision, the ALJ overruled Fitzmaurice's post-hearing objection to the VE testimony and denied her request for vocational interrogatories "because the claimant's representative was given ample opportunity to question the vocational expert at the hearing and the representative did question the vocational expert at the hearing." Tr. 10. The ALJ also stated that Fitzmaurice's objection was overruled because it is within the ALJ's purview to determine whether jobs exist in significant numbers. Tr. 10, 22. The ALJ explained that Fitzmaurice's objection argued that the methodology used by the VE at the hearing to determine the number of jobs was unreliable and the ALJ stated that she disagreed. Tr. 22. The ALJ cited 20 CFR § 404.1566(d), "which allows an [ALJ] to take administrative notice of reliable job information available from various governmental and other publications" such as the DOT published by the Department of Labor, County Business Patterns and Census Reports published by the Bureau of the Census, and the Occupational Outlook Handbook published by the Bureau of Labor Statistics. Tr. 22.

**A. The ALJ did not err when she overruled Fitzmaurice's post-hearing objections because Fitzmaurice had waived them**

Fitzmaurice complains that the ALJ overruled her objections to the VE testimony because she failed to raise those objections at the hearing. Doc. No. 13, p. 8; Doc. No. 16, pp. 1-2. She submits that the ALJ's rationale "would require a claimant to prepare rebuttal evidence before the evidence to be rebutted even exists," and that, "without even a minimal opportunity to review the VE's testimony considering the authorities the expert relied on, there is no way to even know whether any objections or rebuttal evidence are appropriate." Doc. No. 13, p. 10. She states that no prehearing report was submitted by the VE; the VE testimony occurred at the end of the hearing; and that "It is simply not reasonable to expect, in the waning moments of the hearing with no notice of what a VE might say,

10

when the VE can rely on any number of vocational sources (including their own experience), that a representative can effectively raise every possible issue without first consulting the source materials, not to mention cross-reference these to other relevant sources." Doc. No. 13, p. 9.

Fitzmaurice's argument fails. First, Fitzmaurice had an ability to cross-examine the VE at the hearing, did cross-examine him at the hearing, and failed to question him about the issues she later raised in her post-hearing brief. Thus, Fitzmaurice has waived this issue. *See Wyrock v. Comm'r of Soc. Sec.*, 2020 WL 1322846, at *3 (N.D. Ohio Mar. 20, 2020) (finding arguments raised in a post-hearing brief challenging VE testimony had been waived when the claimant had an ability to cross-examine the VE at the hearing, did cross-examine him, and failed to question him about issues raised in the post-hearing brief); *see also Zimmerman v. Comm'r of Soc. Sec.*, 2019 WL 4736267, at *8 (N.D. Ohio Sept. 27, 2019) ("The failure to object to evidence, or failure to cross-examine a VE about a topic at the hearing, precludes the claimant from later raising the issue." (collecting cases)).

In *Murnahan v. Comm'r of Soc. Sec.*, 2020 WL 7024847, at *6 (N.D. Ohio Nov. 30, 2020), the court stated, "[A]bsent any specific evidence to the contrary, such as when a claimant makes an on the record request at the hearing to hold the hearing open for post-hearing brief detailing his objection to the VE's testimony and the ALJ clearly agrees to so hold the record open,[] a claimant who fails to object at the hearing to the testimony of a VE waives the right to subsequently object to that testimony and an ALJ has no obligation to address unsolicited post-hea[r]ing objections to the VE testimony." Here, Fitzmaurice did not ask the ALJ to hold the record open for additional vocational evidence.[4] Thus, the ALJ had no obligation to address her unsolicited, post-hearing brief challenging the VE testimony.

---

[4] Fitzmaurice's pre-hearing letter to the ALJ, in which she referenced outstanding medical evidence and added, "nothing in this letter should be construed as waiving the claimant's right to submit written post-hearing objections and statements with respect to any vocational witness testimony" (Doc. 13, p. 8, Tr. 298), is insufficient to request permission to submit a post-hearing brief challenging VE testimony. Moreover, at the hearing, Fitzmaurice's counsel asked for more time to submit the outstanding medical records referenced in the letter and the ALJ agreed to leave the record open for Fitzmaurice's counsel to submit those records. Tr. 44, 76. Fitzmaurice did not mention a desire to submit post-hearing evidence regarding VE testimony.

11

Moreover, evidence in the record indicated that Fitzmaurice had limitations with social interaction. Thus, her attorney should have expected that the ALJ's hypothetical to the VE would include a limitation regarding social interaction. Indeed, the prior ALJ's decision limited Fitzmaurice to occasional interaction with supervisors, coworkers, and the public. Tr. 89. The state agency reviewers in her current application opined that Fitzmaurice was limited to social interactions that are brief, infrequent, and superficial. Tr. 110, 119. At the hearing, Fitzmaurice's attorney stated that he had worked with Fitzmaurice "for a very long time," he had represented her in her case before the prior ALJ, and that he knew "her case record very well," including her psychiatric-based restrictions stemming from her social issues (isolation, irritability, concentration). Tr. 47. Thus, it is not believable that Fitzmaurice's attorney would be unprepared to ask the VE questions at the hearing about the effect her social limitations would have on her ability to withstand a job's probationary period, as she asserts. Doc. No. 13, p. 9, n.4; Doc. No. 16, p. 3. In fact, Fitzmaurice's rebuttal report created by Heckman is similar to a report that the same attorney had relied upon in cases in this district since at least October 2018, a year before the hearing in Fitzmaurice's case. *See Wyrock*, 2020 WL 1322846, at *2-3 (rejecting the claimant's argument that the ALJ erred by not considering Heckman's October 2018 report submitted to the ALJ after the hearing, which had argued that the training period for unskilled jobs requires more than occasional interaction with supervisors and coworkers and that a person so limited "would not survive the training/probationary period and would be unemployable in the competitive labor market."). The fact that Fitzmaurice's attorney had submitted Heckman's report to an ALJ a year before Fitzmaurice's hearing further undercuts Fitzmaurice's argument that she was unprepared to challenge VE testimony regarding the limitation of social interaction in the probationary period.

Finally, Heckman's opinion regarding social interaction during a job's probationary period has

been circulating in the district courts in the Sixth Circuit as early as 2015. *See Wyrock*, 2020 WL 1322846, at *3 (citing *White v. Saul*, 2019 WL 4684445, at *5 (E.D. Ky. Sept. 25, 2019) (commenting that a 2015 report created by independently obtained vocational expert Paula Santagati, which stated that occasional interaction with others precluded unskilled work because the claimant would not make it past the 30-day training period, had been relied on by numerous social security claimants who submitted Santagati's report after the hearing to challenge VE testimony); *Kidd v. Berryhill*, 2018 WL 3040894, at *6 (E.D. Ky. June 19, 2018); *Robberts v. Comm'r of Soc. Sec.*, 2019 WL 4023549, at *7-8 (S.D. Oh. Aug. 26, 2019); *Jordan v. Comm'r of Soc. Sec.*, 2019 WL 640928, at *8-9 (E.D. Mich. Jan. 28, 2019); *Cockrell v. Comm'r of Soc. Sec.*, 2020 WL 633311, at *5-6 (S.D. Oh. Feb. 11, 2020)). And challenges to the agency's use of the DOT, rather than the Department of Labor's O*NET website, has also been raised and rejected, as explained in detail, *infra*; it cannot be said that Fitzmaurice's argument that the DOT is outdated and that the O*NET is a more reliable source is a new argument that Fitzmaurice was unprepared to make at the hearing. Although Fitzmaurice may have not anticipated the specific jobs the VE identified, that did not prevent her from exploring the timeliness of the information in the DOT and the competing information found on the O*NET at the hearing. "Even without specific data, an applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions." *Biestek v. Berryhill*, --U.S.--, 139 S. Ct. 1148, 1156 (2019) (rejecting a claimant's argument urging the Court to adopt a categorical rule that a VE must turn over the underlying data she relied upon for her opinion).

Fitzmaurice cites legal authority in support of her argument, none of which is persuasive. She concedes that there "are virtually no detailed procedural requirements in Social Security proceedings" and does not cite any authority requiring an ALJ to consider post-hearing briefs in the circumstances in

this case. Doc. No. 13, p. 9. She cites a footnote in SSR 96-9p, which states,

> A VE may be used before, during, or after a hearing. Whenever a VE is used, the individual has the right to review and respond to the VE evidence prior to the issuance of a decision. The VE's opinion is not binding on an adjudicator, but must be weighed along with all other evidence.

1996 WL 374185, a *9, n. 8 (S.S.A. July 2, 1996). But SSR 96-9p is titled, "Policy Interpretation Ruling Titles II And XVI: Determining Capability To Do Other Work--Implications Of A Residual Functional Capacity For Less Than A Full Range Of Sedentary Work."[5] Here, in contrast, the ALJ found that Fitzmaurice could perform a full range of work at all exertional levels. Moreover, SSR 96-9p does not compel an ALJ to accept rebuttal evidence after a hearing at which the claimant heard the VE's testimony, had an opportunity to respond to it and did respond to it, and did not request additional time to submit rebuttal evidence. *Murnahan*, 2020 WL 7024847, at *6.

Fitzmaurice's reliance upon *Patrick S. v. Saul*, 2019 WL 3814283 (D. Me. Aug. 14, 2019) is misplaced. In *Patrick S*, the court remanded because the ALJ "ignored the plaintiff's rebuttal vocational expert affidavit" and "his decision does not even mention it." *Id*. at *2. Here, the ALJ did not ignore Fitzmaurice's rebuttal vocational evidence and she discussed it in her decision. *See also Palombo v. Berryhill*, 2018 WL 3118286, at *5 (D.N.H. June 25, 2018) (reversing because the ALJ did not reference the claimant's post-hearing vocational expert affidavit or submit it as evidence in the record; the ALJ "never explained her reasoning, which prevents the court from conducting any meaningful judicial review. That error justifies remanding the case."); *McDaniel v. Saul*, 2021 WL 1153198, at *4 (M.D. Fla. Mar. 26, 2021) (reversing because the ALJ declined to admit into evidence a report (written by Heckman) that the claimant submitted after the hearing).[6] And in *Kelly v. Saul*, 2019 WL 3492449, at

---

[5] SSR 96-9p explains, "An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." 1996 WL 374185, at *1.

[6] In a footnote, Fitzmaurice cites *Revere v. Berryhill*, 2019 WL 99303, at *5 (E.D. Va. Jan. 3, 2019), but that court found that the claimant waived objections to the VE testimony when she did not object during the hearing and filed a post-hearing brief.

*3 (D.N.H. Aug. 1, 2019), the court found that the ALJ erred when excluding a post-hearing vocational expert affidavit stating that a morbidly obese individual requiring a bariatric chair could not perform the jobs identified by the VE at the hearing when the claimant had asked the VE at the hearing whether the jobs could be performed by someone who needed a bariatric chair and the VE did not know the answer to that question.

Fitzmaurice also cites *Stewart v. Astrue*, 2012 WL 5494662 (E.D. Pa. Nov. 13, 2012) and *Westmoreland v. Berryhill*, 2018 WL 1522118 (S.D. Oh. March 28, 2018). In *Stewart*, the court stated, "Cross-examining a VE does not afford a claimant ample opportunity to 'review' the VE's testimony" per SSR 96–9p. 2012 WL 5494662, at *7.[7] In *Westmoreland*, the court found that the claimant's failure to object to VE testimony at the hearing did not result in a waiver of her right to challenge that testimony in a post-hearing brief. 2018 WL 1522118, at *3-4. Nevertheless, given the cases in this district finding otherwise, the Court does not find *Stewart* or *Westmoreland* persuasive. *See, e.g., Wyrock*, 2020 WL 1322846, at *3; *Zimmerman*, 2019 WL 4736267, at *8; *Murnahan*, 2020 WL 7024847, at *6; *Komorowski v. Comm'r of Soc. Sec.*, 2020 WL 4390523, at *2 (N.D. Ohio July 31, 2020). The ALJ did not err when she overruled Fitzmaurice's post-hearing objections because Fitzmaurice had waived them

**B. The ALJ's discussion regarding Fitzmaurice's post hearing brief was sufficient**

Assuming, *arguendo*, that the ALJ had an obligation to consider Fitzmaurice's post-hearing brief and Heckman's report, the ALJ considered those items and her discussion of them was sufficient.

Fitzmaurice complains that the ALJ's discussion of the Heckman's rebuttal report regarding the number of jobs "is borderline incomprehensible; to the extent it can be understood, the ALJ misstates Agency policy." Doc. No. 13, p. 11. The ALJ wrote,

> The claimant's representative objected to these job numbers on the ground that the vocational expert's methodology for determining numbers of jobs is not reliable. The undersigned

---

[7] The court affirmed the ALJ's decision because the "ALJ's refusal to keep the record open to afford Plaintiff an opportunity to review the VE's testimony constituted harmless error." *Stewart*, 2012 WL 5494662, at *8.

>overrules this objection. The vocational expert has professional knowledge and experience in job placement. Mr. Liner presented an opinion of a paid vocational expert to show that those job numbers were not reliable. The undersigned overruled the objections based upon 20 CFR §404.1566(d) which allows an Administrative Law Judge to take administrative notice of reliable job information available from various governmental and other publications. Specific examples include the Dictionary of Occupational Titles published by the Department of Labor, County Business Patterns and Census Reports published by the Bureau of the Census, and Occupational Outlook Handbook published by the Bureau of Labor Statistics. Thus, vocational expert testimony is not necessary on this issue. It is the purview of the Administrative Law Judge to determine whether jobs exist in significant numbers. The claimant's objection to the vocational expert's testimony is therefore overruled. Accordingly, the vocational expert's job information is found to be reliable.

Tr. 22.

Fitzmaurice contends that the ALJ has "not even suggested, no less proven," that Heckman's report, based on the O*NET, is an unreliable source of job information. Doc. No. 13, p. 12. But an ALJ is not required to "explain in detail his decision concerning post-hearing vocational-opinion objections." *Luna v. Soc. Sec. Admin.*, 2020 WL 5549318, at *16 (N.D. Ohio Aug. 28, 2020).[8] And the Sixth Circuit has stated,

>Recognizing the apparent confusion among some of the lower courts about whether the DOT continues to be a reliable source of information at step five, we clarify that the DOT data can establish the existence of jobs in the national economy in significant numbers….The current regulation governing this inquiry lists the DOT as a source of "reliable job information." 20 C.F.R. § 404.1566(d)(1). The regulation does not list O*NET as a reliable source. And, in fact, in 2010, the SSA determined that O*NET in its current form was not suitable for disability claims adjudication. *See* Occupational Infor. Dev. Advisory Panel, *Findings Report: A Review of the National Academy of Sciences Report*, Report to the Comm'r of Soc. Sec. 1, 8 (June 28, 2010)….

*O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020); *see also Murnahan*, 2020 WL 7024847, at *6 ("'[T]he DOT continues to be recognized as a source of reliable job information' at Step Five.[] In that regard, an ALJ is not required to consult the job descriptions contained in the O*NET." (quoting *O'Neal* and *King v. Saul*, 2020 WL 1025170 (N.D. Ohio March 3, 2020)); *Zimmerman*, 2019 WL 4736267, at *12 (rejecting the claimant's argument that the ALJ's reliance upon VE testimony was error because the post-hearing vocational expert rebuttal report relied on the updated O*NET; "The ALJ

---

[8] Report and recommendation adopted, 2020 WL 5544379 (N.D. Ohio Sept. 15, 2020).

16

was entitled to rely on the testimony of the VE identifying specific jobs available in the economy that an individual with the claimant's limitations could perform. That testimony constitutes substantial evidence supporting the ALJ's finding that the claimant can perform other work.").

Fitzmaurice argues that the ALJ had an obligation to resolve the conflicting vocational evidence. Doc. No. 13, p. 14. The Court disagrees. "[T]here is no requirement that the ALJ resolve conflicts between vocational evidence provided by either state agency employees or by other VEs." *Herndon v. Comm'r of Soc. Sec.*, 2021 WL 811660, at *25 (N.D. Ohio March 3, 2021) (citing *Harrington v. Comm'r of Soc. Sec.*, 2015 WL 5308245, at *7 (N.D. Ohio Sept. 10, 2015)). The ALJ considered the VE testimony at the hearing, Fitzmaurice's post-hearing brief and Heckman's report and found that the VE testimony was consistent with the DOT and was reliable. Tr. 22. Thus, the ALJ's decision is supported by substantial evidence and is affirmed. *Luna*, 2020 WL 5549318, at *16; *Zimmerman*, 2019 WL 4736267, at *12.

## VII. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: December 21, 2021  *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge